IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHON M. BENNETT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, ET. Al. | : | NO. 22-1591 |

## MEMORANDUM

**Padova, J.**   **April 4, 2024**

  Plaintiff Stephon Bennett has filed this action against the Pennsylvania Department of Corrections ("DOC"), the Superintendent of the State Correctional Institution ("SCI") Phoenix, and seven individuals employed in the psychiatric or psychological staff at SCI Phoenix (the "individual Defendants"). The Amended Complaint asserts claims pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act (the "ADA") arising from Mr. Bennett's transfer out of the Residential Treatment Unit for individuals with serious psychiatric disorders at SCI Phoenix (the "RTU") into a non-specialized general population housing unit. Before the Court is a Motion to Dismiss one of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) brought by two Defendants, Dr. Glushakow and Samantha Huyett. We deny the Motion for the following reasons.

**I. FACTUAL BACKGROUND**

  The Amended Complaint alleges the following facts. Mr. Bennett is 35 years old, has been incarcerated since he was 18, and has been serving a life sentence in DOC custody since 2010. (Am. Compl. ¶¶ 1, 16-18.) He has been diagnosed with the following mental illnesses while he has been incarcerated by the DOC: posttraumatic stress disorder with dissociative symptoms; unspecified insomnia disorder; antisocial personality disorder; borderline personality

disorder; and major depressive disorder, recurrent, severe with psychotic features. (Id. ¶¶ 1, 26-27.) He has tried to kill himself at least six times since 2014 and has been placed in a Psychiatric Observation Cell ("POC") at least 21 times. (Id. ¶¶ 1, 21, 25.) He was committed to the Mental Health Unit ("MHU") at SCI Smithfield for one week in 2014 after a suicide attempt.[1] (Id. ¶¶ 21-22.) In 2018, Mr. Bennett was placed on the "D Roster," a classification for individuals who have been diagnosed with a serious mental illness. (Id. ¶ 28.) Mr. Bennett was also committed to the MHU for one month in 2018. (Id. ¶ 29.) Mr. Bennett was again committed to the MHU for one month in 2019. (Id. ¶ 30.)

In September 2020, Mr. Bennett was transferred to SCI Phoenix's RTU. (Id. ¶¶ 2, 32.) The RTU "is designed to provide structure, consistency, and support to individuals who have been diagnosed with a serious psychiatric disorder." (Id. ¶ 33.) Correctional staff working in the RTU are "required to have specialized training, including crisis intervention training, mental health first aid, and suicide prevention training." (Id. ¶ 33.a.) RTU staff are also "required to offer at least 35 hours of programming per week for the incarcerated individuals on that unit, including group therapy." (Id. ¶ 33.b.) The DOC's general population units have no such programming requirements. (Id.) While Mr. Bennett was housed in the RTU, he reached his greatest period of stability since his mental illness diagnosis, had minimal to no instances of self-harm, had fewer instances of placement in the POC, and was able to hold a job. (Id. ¶¶ 2, 34.)

At all relevant times, Defendant Glushakow was a psychiatrist at SCI Phoenix and Defendant Huyett was a Certified Registered Nurse Practitioner with the psychiatric or psychological staff at SCI Phoenix. (Id. ¶¶ 10, 12.) In late 2021, they, as well as five of the other individual Defendants to this lawsuit, voted to remove Mr. Bennett from the RTU and

---

[1] MHUs are the DOC's inpatient psychiatric units and being held in an MHU is the equivalent of being psychiatrically committed. (Id. ¶ 23.)

reassign him to housing in the general population. (Id. ¶ 35.) The DOC's general population units provide fewer psychological services and opportunities for group therapy than the RTU. (Id. ¶ 35.a.) In addition, correctional staff working in general population units are not required to have training in crisis intervention, mental health first aid, and suicide prevention. (Id. ¶ 35.b.)

In January 2022, after Mr. Bennett learned that he was being moved out of the RTU, he engaged in self-harm by cutting himself badly enough to require stitches, cutting out his stitches, and cutting his other arm with a razor. (Id. ¶ 36.) He was placed in a POC for a week after this incident of self-harm. (Id. ¶ 37.) Mr. Bennett was moved out of the RTU and into the general population in May or June 2022. (Id. ¶ 38.) Since Mr. Bennett was moved to the general population, he has engaged in self-harm; has not been complaint with his psychiatric medication; has suffered from depression and has isolated in his cell for several days in a row, missing out-of-cell activities and programming; has been placed in a POC because of suicidal ideation; has been unable to engage in the same out-of-cell activities he participated in while he was in the RTU; and has not had access to the same group therapy programs that he participated in while he was assigned to the RTU. (Id. ¶ 39)

The Amended Complaint asserts two claims for relief. Count 1 asserts a claim against all of the individual Defendants pursuant to 42 U.S.C. § 1983. Count 1 alleges that the individual Defendants violated Mr. Bennett's rights under the Eighth Amendment through deliberate indifference to his serious medical need for adequate mental health care. Count 2 asserts a claim against the DOC for violation of the ADA. Count 2 alleges that the DOC subjected Mr. Bennett to discrimination by depriving him of services, programs, and activities on account of his psychiatric disability. The Amended Complaint requests compensatory and punitive damages, as well as declaratory and injunctive relief to ensure that Mr. Bennett receives constitutionally

adequate mental health care. Defendants Glushakow and Huyett have moved to dismiss Count 1 as against them for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "'consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). "We accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). However, we "need not 'accept as true a legal conclusion couched as a factual allegation.'" Host Int'l, Inc. v. MarketPlace PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (citation omitted).

A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); and then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

### III. DISCUSSION

Count 1 alleges a claim for violation of Mr. Bennett's rights under the Eighth Amendment pursuant to 42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (footnote and citation omitted). Thus, in order to state a claim for relief under § 1983, "a plaintiff must demonstrate [that] the defendant, acting under color of state law, deprived him . . . of a right secured by the Constitution or the laws of the United States." Id. (citations omitted). The Eighth Amendment right to be free from cruel and unusual punishment "'imposes duties on [prison] officials, who must . . . ensure that inmates receive . . . medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)) (citations omitted). To state a claim under the Eighth Amendment arising from the denial of medical care to an inmate, a complaint must plausibly allege that a defendant showed "[1] deliberate indifference to [2] serious medical needs of [a] prisoner[ ]." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

"Deliberate indifference can be shown by a prison official 'intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" Stones v. McDonald, 573 F. App'x 236, 237 (3d Cir. 2014) (per curiam) (quoting Estelle, 429

U.S. at 104-05). "A medical need is serious if it is one that 'has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)). Moreover, the medical need "'must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death.'" Tsakonas v. Cicchi, 308 F. App'x 628, 632 (3d Cir. 2009) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991)).

A prison official acts with deliberate indifference to a serious medical need "'if [he] knows of and disregards an excessive risk to inmate health or safety.'" Shorter, 12 F.4th at 372 (quoting Farmer, 511 U.S. at 837). "The official must be aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Brown v. Thomas, 172 F. App'x 446, 450 (3d Cir. 2006) (citation omitted). "[D]eliberate indifference 'requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk.'" Baez v. Falor, 566 F. App'x 155, 158 (3d Cir. 2014) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). Accordingly, negligence or medical malpractice is not sufficient to establish deliberate indifference. Rouse, 182 F.3d at 197; see also Farmer, 511 U.S. at 835 (stating that "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety'" (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986))). "'Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.'" Bonadonna v. Zickefoose, 601 F. App'x 77, 79 (3d Cir. 2015) (per curiam) (alteration in original) (quoting Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Thus, "[t]he deliberate indifference 'test

affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients.'" Beckett v. Pennsylvania Dep't of Corrs., 597 F. App'x 665, 668 (3d Cir. 2015) (quoting Inmates of Allegheny Cnty. Jail, 612 F.2d at 762).

A. Personal Involvement

Defendants Glushakow and Huyett argue that we should dismiss Count 1 as against them because the Amended Complaint fails to plausibly allege that they were personally deliberately indifferent to Mr. Bennett's serious medical needs. A prison official may be deliberately indifferent to a prisoner's serious medical needs where that official "'(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" Est. of Kempf v. Washington Cnty., Civ. A. No. 15-1125, 2018 WL 4354547, at *17 (W.D. Pa. Sept. 12, 2018) (quoting Innis v. Wilson, 334 F. App'x 454, 456 (3d Cir. 2009)). "Prison officials are not permitted to either deny 'reasonable requests' for medical treatment **or** opt for 'easier and less efficacious' treatment plans." Id. (quoting Palakovic v. Wetzel, 854 F.3d 209, 228 (3d Cir. 2017)). "'When facts have been pled which, if proven, would demonstrate that the prison officials actually knew of the suicidal tendencies of a particular prisoner, and ignored their responsibility to take reasonable precautions, the complaint has survived dismissal.'" Id. at *18 (quoting Freedman v. City of Allentown, 853 F.2d 1111, 1115 (3d Cir. 1988)).

The Amended Complaint alleges that Defendants Glushakow and Huyett, who were both part of the psychiatric or psychological staff at SCI Phoenix, voted to remove Bennett from the RTU and put him in a general population unit. (Am. Compl. ¶¶ 10, 12, 35.) The Amended Complaint also alleges that Mr. Bennett has serious mental health disorders and a long history of

self-harm and suicide attempts. (See id. ¶¶ 1, 21-32.) The Amended Complaint further alleges that Defendants Glushakow and Huyett failed to provide needed medical care to Mr. Bennett by removing him from the RTU and failing to return him to the RTU. (Id. ¶ 42.) Construing the factual allegations in the complaint "in the light most favorable to the plaintiff," Shorter, 12 F.4th at 371 (citation omitted), we can infer from the Amended Complaint that, as members of the psychiatric or psychological staff at SCI Phoenix empowered to participate in decision making concerning whether an inmate should be housed in the RTU, Defendants Glushakow and Huyett were aware of the mental health services provided in the RTU and those services provided to individuals housed in the general population. We can also infer that, in order to make a decision regarding Mr. Bennett's placement in the RTU, Defendants Glushakow and Huyett must have been aware of Mr. Bennett's psychiatric history. Accordingly, we conclude that the Amended Complaint sufficiently alleges that Defendants Glushakow and Huyett were aware of Mr. Bennett's long history of psychiatric illness, self-harm, and suicide attempts at the time that they voted to removed him from the RTU and send him to be housed with the general population at SCI Phoenix, where he would receive significantly fewer mental health services. We further conclude that the Amended Complaint thus alleges a facially plausible claim that Defendants Glushakow and Huyett were personally deliberately indifferent to Mr. Bennett's serious medical needs for psychiatric treatment. See Est. of Kempf, 2018 WL 4354547, at *18 (quotations omitted). Accordingly, we deny the Motion to Dismiss with respect to this argument.

      B.      Medical Judgment

Defendants Glushakow and Huyett also argue that the Amended Complaint fails to plausibly allege that they violated Mr. Bennett's Eighth Amendment right to treatment for his

serious psychiatric illnesses because the Amended Complaint alleges that he continues to receive mental health care in his general population housing unit. "Inmates' disagreements with prison medical personnel about the kind of treatment received . . . generally have not been held to violate the Eighth Amendment." Clark v. Doe, Civ. A. No. 99-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000 (citing Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)). "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." Palakovic, 854 F.3d at 227 (citing Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993)). "Allegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment." Id. (citing Estelle, 429 U.S. at 105-06). Thus, "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" Id. at 228 (quoting United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979); see also Positano v. Pa. Cardiothoracic Surgery, Inc., 610 F. App'x 191, 193 (3d Cir. 2015) (per curiam) (same).[2]

"Nonetheless, there are circumstances in which some [medical] care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less

---

[2] Defendants Glushakow and Huyett also argue that we should dismiss Count 1 because inmates do not have a "constitutional right to be . . . confined in a particular cell." Stafford v. Corizon Health, Inc., Civ. A. No. 15-2333, 2016 WL 4191764, at *6 (M.D. Pa. Aug. 9, 2016) (citing Rhodes v. Chapman, 452 U.S. 337 (1981); Hodges v. Wilson, 341 F. App'x 846, 846 (3d Cir. 2009)). However, the Amended Complaint does not allege that Mr. Bennett was confined to the wrong cell, but that he was unable to receive the psychiatric treatment he needs because he was transferred out of the RTU. We therefore deny the Motion to Dismiss with respect to this argument.

efficacious treatment' of the inmate's condition." Palakovic, 854 F.3d at 227 (quoting West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978). "Nor may 'prison authorities deny reasonable requests for medical treatment . . . [when] such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" Id. (quoting Monmouth Cnty. Corr. Inst. Inmates, 834 F.2d at 346). Moreover, a complaint has been found to state a plausible claim that a prison psychiatrist acted with deliberate indifference to an inmate's serious medical needs where it pled that the plaintiff told the doctor that he was concerned that he might harm himself, was depressed, and had suicidal thoughts and the doctor released the inmate from the POC to a restrictive housing unit. See Finney v. Palakovich, Civ. A. No. 09-1751, 2010 WL 3718022, at *3 (M.D. Pa. Sept. 20, 2010); see also Brandt v. PrimeCare Med. Inc., Civ. A. No. 11-1692, 2013 WL 3863936, at *3-4 (M.D. Pa. July 24, 2013) (denying doctor's motion for summary judgment with respect to claim that he acted with deliberate indifference to a mentally ill inmate's serious medical needs where the doctor allowed the inmate to be transferred from a stripped cell to psych watch in a regular cell even though the prisoner told the doctor that he had spoken with ghosts who told him to write sick call notes stating "bad thoughts suicide").

The Amended Complaint alleges that Mr. Bennett has a long history in the DOC of mental illness, self-harm, placement in the MHU, placement in the POC, and suicide attempts. (See Am. Compl. ¶¶ 1, 21-31.) The Amended Complaint also alleges that the RTU provides at least 35 hours or programming per week, including group therapy, and correctional staff with specialized training. (Id. ¶ 33.) The Amended Complaint further alleges that Mr. Bennett's mental health stabilized in the RTU and, while he was on the RTU, he engaged in minimal to no instances of self-harm and experienced fewer placements in a POC. (Id. ¶ 34.) In addition, the Amended Complaint alleges that SCI Phoenix's general population units provide fewer

psychological services and opportunities to engage in group therapy than are provided in the RTU, and that the correctional staff in the general population units are not required to have specialized training for working with individuals with mental health issues. (Id. ¶ 35.) The Amended Complaint further alleges that, since Mr. Bennett was informed that he would be transferred to the general population, his mental health has deteriorated and he has engaged in self-harm, has been placed in a POC, has suffered from depression and isolated himself in his cell, has been non-compliant with his psychiatric medication, and has refused to eat. (Id. ¶¶ 3, 36-39.) We conclude that the Amended Complaint sufficiently alleges that Defendants Glushakow and Huyett, who voted to remove Mr. Bennett from the RTU where he was receiving the mental health services that he needed, acted with deliberate indifference to Mr. Bennett's serious medical needs by transferring him to the general population where the level of mental health services that he needed was not offered and where his mental health has deteriorated significantly and he has engaged in self-harm. See Palakovic, 854 F.3d at 227.[3]

IV.  **CONCLUSION**

For the foregoing reasons, we deny Defendants Glushakow's and Huyett's Motion to Dismiss. An Order follows.

> BY THE COURT:
>
> /s/ John R. Padova
>
> _____
>
> John R. Padova, J.

---

[3] Defendant Glushakow and Huyett also move to dismiss Count 1 as against them to the extent it purports to raise a claim under the 14th Amendment. Mr. Bennett states in his response to the Motion that he does not intent to assert a claim for violation of his 14th Amendment rights. (Resp. at 3.)