IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHON M. BENNETT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, ET AL. | : | NO.  22-1591 |

## <u>MEMORANDUM</u>

**Padova, J.**                                                                        **September 22, 2025**

Plaintiff Stephon Bennett filed this action against the Pennsylvania Department of Corrections ("DOC") and two individuals employed at SCI Phoenix, Adidelys Colon-Ortiz and Anthony Matteo.[1]  The Amended Complaint asserts a claim against Colon-Ortiz and Matteo pursuant to 42 U.S.C. § 1983 (Count I) and a claim against the DOC pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. (the "ADA") (Count II).  Both claims arise from Mr. Bennett's transfer out of the Residential Treatment Unit for individuals with serious psychiatric disorders at SCI Phoenix (the "RTU") into a non-specialized general population housing unit at that facility.  Defendants have moved for summary judgment with respect to both of Plaintiff's claims.  For the reasons that follow, we grant the Motion as to Count I and deny the Motion as to Count II.

---

[1] Defendants have informed the Court that Defendant Colon-Ortiz's first name is Adidelys, not Adielys, as it is spelled in the Amended Complaint.  In addition, the Amended Complaint also asserted claims against Joseph Terra, the Superintendent of SCI Phoenix, and five additional individuals employed at SCI Phoenix.  On December 20, 2024, the parties entered into a Stipulation of Dismissal to dismiss those six Defendants with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and those Defendants have been terminated as Defendants in this case.  (See Docket No. 56.)

## I.    FACTUAL BACKGROUND

Plaintiff was convicted of second-degree murder and sentenced to life imprisonment.  (Pl. Ex. C at 1 of 5.)  He has been incarcerated by the DOC since 2007.  (Id.)  Plaintiff's June 11, 2018 Psychiatric Assessment, which was performed at SCI-Smithfield, states that he had been diagnosed with major depressive disorder, recurrent, severe with psychotic features; post-traumatic stress disorder ("PTSD"); and antisocial personality disorder.  (Id. at 4 of 5.)  Plaintiff's October 19, 2020 Individual Recovery Plan, which was prepared at SCI Phoenix, states that Plaintiff had been diagnosed with borderline personality disorder; PTSD with dissociative symptoms; antisocial personality disorder; and unspecified insomnia disorder.  (Pl. Ex. D at 1.)  After his October 2020 assessment, Plaintiff was given a Roster Code of "D," meaning that he had been diagnosed with a serious mental illness, an intellectual disability, or a credible functional impairment.  (Id.; Pl. Ex. H at 1.)  While he has been in the custody of the DOC, Plaintiff has made six suicide attempts by hanging himself or cutting himself.  (Pl. Ex. C at 2 of 5.)  He has also been placed in the Mental Health Unit ("MHU") several times while in DOC custody.  (Pl. Ex. D at 4.)

On October 15, 2020, Plaintiff was assigned to the RTU at SCI Phoenix.  (Pl. Ex. G at 1.) The DOC has designed the RTU "to provide structure, consistency, and support to individuals who have been diagnosed with a serious psychiatric disorder and/or a serious impairment with psychological functioning."  (Pl. Ex. B at 1 (emphasis omitted).)  "The RTU staff offer at least 35 hours of programming per week; including two hours each day of unstructured recreational activity."  (Id. at 5.)  Up to ten hours per week may consist of religious services, employment or education programs, but the "[r]emaining programs must be equally distributed through the provision of recreation, treatment specific, community, and therapeutic support."  (Id.)  RTU staff are required to receive training in "Crisis Intervention . . ., Mental Health First Aid . . ., and Suicide

Prevention," as well as "recovery model concepts, behavior modification, conflict intervention, and managing the intellectually impaired." (Id. at 14.) In September 2021, Plaintiff was admitted to the Psychiatric Observation Cell ("POC") because RTU staff were concerned about "his mental health and possible suicidal ideation" after the deaths of his father and aunt. (Pl. Exs. B at 15; E at 1.) After he returned to the RTU, he returned to his normal activities. (Pl. Ex. E at 1.) It was noted at that time that he used the resources available on the RTU, including group programming, Psychological Services Specialist ("PSS") support, and staff support. (Pl. Exs. B at 7; E at 1.) Plaintiff was admitted to the POC again in January 2022, after he engaged in self-harm, cutting himself with a razor resulting in substantial blood loss. (Pl. Exs. A at 2; G at 1.)

On March 14, 2022, Plaintiff was told that PSS Colon-Ortiz had decided to "vote [him] off the R.T.U. and clear [him] for housing in general population." (Pl. Ex. A at 1, 4.) Plaintiff filed a grievance about the decision to move him off of the RTU the same day that he was notified that he was being moved. (Id.) Plaintiff specifically stated in his grievance that he was grieving the decision to move him off of the RTU into general population. (Id. at 1-2.) Plaintiff asserted in his grievance that his "well documented history of self harm and violence has caused a significant disruption [to his] everyday life and prevents his functioning in general population where prison staff aren't trained to deal with prisoners diagnosed with a serious mental illness, staff are not trained in de-escalation techniques and there's no treatment setting." (Id. at 2.) The grievance described past incidents in which Plaintiff had engaged of self-injurious conduct, including a January 5 or 6, 2022 incident in which he cut himself with a razor. (Id.) Plaintiff's grievance was rejected because it "was not submitted within fifteen (15) working days after the events upon which [the] claims are based." (Id. at 3.) Plaintiff appealed the denial of his grievance on the ground that he had filed it immediately after learning that he had been voted off of the RTU. (Id. at 4.) The

Facility Manager denied Plaintiff's appeal of the denial of his grievance on the ground that the grievance concerned a claim that he had self-mutilated with a razor on January 5 or 6, 2022 and his March 14, 2022 grievance was filed more than 15 days after that incident. (Id. at 6.) Plaintiff appealed the Facility Manager's decision to uphold the denial of his grievance because his grievance related to the decision to vote him off of the RTU, not his self-injurious behavior on January 5 or January 6, 2022. (Id. at 7.)

Plaintiff was moved to a general population unit in May 2022. (Bennett Decl. (Docket No. 69) ¶ 1.) He has not received any group therapy in general population. (Id. ¶ 2.) The staff in general population "is not trained in crisis intervention or in de-escalation techniques" and "do[es] not know how to deal with inmates with mental illnesses." (Id. ¶ 3.) Plaintiff went into a depressive state in September 2022, isolated in his cell, and cut himself. (Id. ¶ 5.) In December 2022, Plaintiff argued with staff, cut himself, and covered his cell window. (Id. ¶ 6.) Plaintiff does not take his medication as often in general population as he did in the RTU. (Id. ¶ 7.) Plaintiff makes fewer visits to see psychiatric staff in the general population. (Id. ¶ 8.) Plaintiff has received misconduct citations while in the general population because the staff there are not trained in crisis intervention. (Id. ¶ 9.) Plaintiff has been assigned to the POC multiple times since being moved into the general population because he is "not getting the therapeutic treatment that [he] was receiving in the RTU and because the staff in general population are not trained the same as the staff in the RTU." (Id. ¶¶ 10-11.) Plaintiff has left his cell fewer times since being moved to the general population and has "participated in fewer programs and employment opportunities than [he] did when [he] was in the RTU." (Id. ¶ 12.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. In ruling on a summary judgment motion, the Court "must construe the evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion." Jacobs v. Cumberland Cnty., 8 F.4th 187, 192 (3d Cir. 2021) (citing Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by:  (A) citing to particular parts of materials in the record . . . or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The court will grant summary judgment if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "'While the evidence that the non-moving

party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'" Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005)). However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) (citing Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989)).

## III.   DISCUSSION

### A.   Count I

Count I alleges a claim pursuant to Section 1983 for failure to provide adequate medical care and failure to protect in violation of the Eighth Amendment against Matteo and Colon-Ortiz. The Amended Complaint alleges that these Defendants were and are deliberately indifferent to Plaintiff's serious need for adequate and individualized mental health care and are failing to protect him from instances of self-harm, causing harm, pain, mental suffering, injury, and an exacerbation of his mental illness. Defendants moved for summary judgment with respect to Count I because Plaintiff failed to exhaust his administrative remedies with respect to this claim and because he cannot establish the elements of a claim for violation of his rights under the Eighth Amendment because he is able to access mental health care while he is housed in the general population.

### 1.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Exhaustion of administrative remedies is mandatory.

6

Ross v. Blake, 578 U.S. 632, 638 (2016) ("As we have often observed, that language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)) (citing Jones v. Bock, 549 U.S. 199, 211 (2007))). "The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" Downey v. Pa. Dep't of Corrs., 968 F.3d 299, 305 (3d Cir. 2020) (alteration in original) (quoting Woodford, 548 U.S. at 88). "These procedural rules are supplied by the individual prisons." Id. (citing Jones, 549 U.S. at 218; Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004)). "There is one exception to the mandatory exhaustion requirement: administrative remedies must be available to the prisoner." Id. (citing Ross, 578 U.S. at 642). "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Id., (alterations in original) (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)).

"An inmate must substantially comply with a prison grievance system's procedural rules to avoid procedural default of a claim." Estien v. Showalter, 723 F. App'x 93, 95-96 (3d Cir. 2018) (citing Spruill, 372 F.3d at 228-32). "The Pennsylvania Department of Corrections' grievance policy involves a three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA." Id. (citation omitted). The DOC's inmate grievance system is governed by Administrative Directive 804 ("ADM 804"). (Pl. Ex. J.) Pursuant to ADM 804, "the inmate must submit [the] grievance to the Facility Grievance Coordinator/designee using the DC-804, Part 1." (Id. § 1.A.5 (emphasis omitted).) The inmate must submit a grievance "within 15 working days after the event upon which the claim is based." (Id. § 1.A.8.) "An inmate

may appeal the rejected grievance to the Facility Manager in accordance with Section 2 of this procedures manual." (Id. § 1.A.21 (emphasis omitted).) Section 2 of ADM 804 provides that "[a]n inmate may appeal an initial review response/rejection to the Facility Manager in writing, within 15 working days from the date of the initial review response/rejection." (Id. § 2.A.1.a.) "Any inmate who is dissatisfied with the disposition of an appeal from the Facility Manager/designee may submit an Inmate Appeal to Final Review . . . within 15 working days from the date of the Facility Manager/designee's decision." (Id. § 2B.1.b. (emphasis omitted).) "Only issues raised in the initial grievance and/or appealed to the Facility Manager may be appealed to Final Review." (Id. (emphasis omitted).) An Appeal to Final Review is sent to the "Chief, Secretary's Office of Inmate Grievances and Appeals." (Id. § 2.B.1.i (emphasis omitted).)

Defendants argue that they are entitled to summary judgment with respect to Count I because Plaintiff failed to exhaust his administrative remedies regarding his removal from the RTU. Plaintiff filed a grievance against Colon-Ortiz regarding his removal from the RTU and transfer to general population the day that he learned of the decision to remove him from the RTU. (See Pl. Ex. A at 1-2, 4.) The grievance states that Plaintiff was "filing this grievance against PSS Colon for failure to protect and deliberate indifference to [his] mental health needs and safety, which constitutes cruel and unusual punishment and a violation of [his] 8th Amendment rights." (Id. at 1.) The grievance specifically states that it "arose from PSS Colon's recent decision to vote [Plaintiff] off the R.T.U. and clear [him] for housing in general population." (Id.) The grievance also describes Plaintiff's need for the special services provided on the RTU, based on his diagnoses and history of self-harm and psychiatric commitments to hospitals and MHUs. (Id. at 1-2.) The grievance further mentions Plaintiff's most recent incidents of self-harm, which occurred in January 2022, only two months before Plaintiff learned that he was being removed from the RTU.

(Id. at 2.)  Plaintiff asserts in his grievance that his "well documented history of self harm and violence has caused a significant disruption to [his] everyday life" and that it "prevents his functioning in general population where prison staff aren't trained to deal with prisoners diagnosed with a serious mental illness, staff are not trained in de-escalation techniques and there's no treatment setting."  (Id. at 2.)

Plaintiff's March 14, 2022 grievance was denied as untimely because Plaintiff did not file it within 15 days of his self-harm on January 5 or 6, 2022.  (Id. at 3, 6.)  As described above, Plaintiff appealed the denial of his grievance on the ground that he had not filed a grievance with respect to his actions of January 2022, but had timely grieved the decision to remove him from the RTU, which he learned about on March 14, 2022.  (Id. at 4-5.)  Plaintiff's appeal was denied by the Facility Manager because his "grievance was not submitted within fifteen (15) working days after the events upon which claims are based.  Dates referred to are 1/5/2022 or 1/6/2022."  (Id. at 6.)  Plaintiff appealed the Facility Manager's decision to uphold the denial of his grievance on the ground that his grievance concerned the March 14, 2022 decision to remove him from the RTU, not his self-injurious conduct of January 5 or 6, 2022.  (Id. at 7.)  We conclude that Plaintiff has pointed to evidence of record that he timely filed a grievance of his removal from the RTU, properly appealed the denial of that grievance to the Facility Manager, and properly appealed the denial of his appeal to Final Review in compliance with ADM 804.  We therefore deny the Motion for Summary Judgment with respect Defendant's argument that Plaintiff failed to exhaust his administrative remedies in connection with his claim against Colon-Ortiz in Count I of the Amended Complaint.

Defendants also argue that Matteo is entitled to the entry of summary judgment in his favor with respect to Plaintiff's claim against him in Count I because Plaintiff failed to exhaust his claim

against Matteo since he did not identify Matteo in his grievance.  ADM 804 requires that grievances "identify individuals directly involved in the event(s)."  (Pl. Ex. J § 1.A.11.b.)  In Spruill, the United States Court of Appeals for the Third Circuit, which examined an earlier version of ADM 804, determined that this section "required an inmate to name the individuals in the grievance against whom the inmate eventually brings suit."  Thomas v. Brinich, Civ. A. No. 12-1539, 2014 WL 866447, at *3 (M.D. Pa. Mar. 5, 2014), aff'd, 579 F. App'x 60 (3d Cir. 2014). "The purpose of the regulation . . . is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing."  Spruill, 372 F.3d at 234.  "Because including this information in the grievance process is mandatory, courts have held that the failure to do so bars an individual's claims in subsequent litigation."  Shorter v. Sorber, Civ. A. No. 22-5089, 2024 WL 1442163, at *3 (E.D. Pa. Apr. 3, 2024) (citing Williams v. Pa. Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005)) (add'l citation omitted).  Plaintiff did not mention Matteo in his grievance or in either of his appeals.  Consequently, we find that Plaintiff did not exhaust his administrative remedies with respect to his Section 1983 claim against Matteo and we grant the Motion for Summary Judgment with respect to Plaintiff's claim against Matteo in Count I.

    2.  The Section 1983 Claim

Count I alleges a claim pursuant to 42 U.S.C. § 1983 for violation of Mr. Bennett's rights under the Eighth Amendment.  "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create substantive rights."  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (footnote and citation omitted).  Consequently, in order "[t]o prevail on a § 1983 claim, [the plaintiff must] show, first, that [he] was deprived of a constitutional right and, second, that the alleged deprivation was 'committed by a person acting under color of state law.'"  Harvey v. Plains Twp. Police Dep't,

635 F.3d 606, 609 (3d Cir. 2011) (quoting <u>Harvey v. Plains Twp. Police Dep't</u>, 421 F.3d 185, 189 (3d Cir. 2005)).  It is also incumbent on the plaintiff to "identify the exact contours of the underlying right said to have been violated." <u>Berg v. Cnty. of Allegheny</u>, 219 F. 3d 261, 268 (3d Cir. 2000) (quotation omitted).

The Eighth Amendment right to be free from cruel and unusual punishment "'imposes duties on [prison] officials, who must . . . ensure that inmates receive adequate . . . medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)) (citations omitted).  To state a claim under the Eighth Amendment arising from the denial of medical care to an inmate, a complaint must plausibly allege that a defendant showed "[1] deliberate indifference to [2] serious medical needs of [a] prisoner[]." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).

"Deliberate indifference can be shown by a prison official 'intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" <u>Stones v. McDonald</u>, 573 F. App'x 236, 237 (3d Cir. 2014) (per curiam) (quoting <u>Estelle</u>, 429 U.S. at 104-05).  "A medical need is serious if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" <u>Id.</u> (quoting <u>Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987)).  Moreover, the medical need "'must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death.'" <u>Tsakonas v. Cicchi</u>, 308 F. App'x 628, 632 (3d Cir. 2009) (quoting <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017, 1023 (3d Cir. 1991)).

A prison official acts with deliberate indifference to a serious medical need "where he 'knows of and disregards an excessive risk to inmate health or safety.'" <u>Gerholt v. Wetzel</u>, 858 F. App'x 32, 34 (3d Cir. 2021) (quoting <u>Farmer</u>, 511 U.S. at 837). "'[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" <u>Id.</u> (quoting <u>Farmer</u>, 511 U.S. at 837). "[D]eliberate indifference 'requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk.'" <u>Baez v. Falor</u>, 566 F. App'x 155, 158 (3d Cir. 2014) (quoting <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999)). Accordingly, negligence or medical malpractice is not sufficient to establish deliberate indifference. <u>Rouse</u>, 182 F.3d 197; <u>see also</u> <u>Farmer</u>, 511 U.S. at 835 (stating that "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety'" (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986))). "'Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.'" <u>Bonadonna v. Zickefoose</u>, 601 F. App'x 77, 79 (3d Cir. 2015) (per curiam) (alteration in original) (quoting <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979)). Thus, "[t]he deliberate indifference 'test affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients.'" <u>Beckett v. Pa. Dep't of Corrs.</u>, 597 F. App'x 665, 668 (3d Cir. 2015) (quoting <u>Inmates of Allegheny Cnty. Jail</u>, 612 F.2d at 762).

Defendants argue that Colon-Ortiz is entitled to the entry of summary judgment in her favor as to Plaintiff's Section 1983 claim because he cannot point to evidence that she was deliberately indifferent to his serious medical needs. Defendants assert that Plaintiff simply disagrees with the treatment he has received since he was moved out of the RTU. "Inmates' disagreements with

prison medical personnel about the kind of treatment received . . . generally have not been held to violate the Eighth Amendment." Clark v. Doe, Civ. A. No. 99-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) (citing Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)). "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." Palakovic v. Wetzel, 854 F.3d 209, 227 (3d Cir. 2017) (citing Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993)). "Allegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment." Id. (citing Estelle, 429 U.S. at 105-06). Thus, "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" Id. at 228 (quoting United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979)); see also Positano v. Pa. Cardiothoracic Surgery, Inc., 610 F. App'x 191, 193 (3d Cir. 2015) (per curiam) (same).

Defendants have submitted evidence that Colon-Ortiz continued to treat Plaintiff after he was moved to general population. Specifically, Colon-Ortiz met with Plaintiff in March, April and May 2022. (See Defs. Ex. E at 12.) There is also record evidence that Plaintiff chose to stop meeting with the psychiatric staff "as much because [he] felt like they were not listening to [him]." (Bennett Decl. ¶ 8.) Plaintiff is also still receiving medication for his psychiatric illnesses and has "had multiple stints in the POC." (Id. ¶¶ 7, 10.) We find that the record contains evidence that Plaintiff has received some psychiatric treatment and medication since he was moved to general population and that one of the reasons that he has received less psychiatric care is that he chose to stop seeing the psychiatric staff as much as he had previously. Under these circumstances, where

Plaintiff has received some psychiatric treatment since he was removed from the RTU, we conclude that Plaintiff has failed to demonstrate the existence of a genuine issue of material fact regarding whether Colon-Ortiz was deliberately indifferent to Plaintiff's serious medical needs. See Palakovic, 854 F.3d at 227 (citation omitted).

Defendants also argue that Colon-Ortiz is entitled to the entry of summary judgment with respect to Plaintiff's claim that she failed to prevent him from instances of self-harm in violation of the Eighth Amendment. "To prove an Eighth Amendment violation based on a failure to ensure his reasonable safety, [Plaintiff] must show that the Defendants were deliberately indifferen[t] to a substantial risk of serious harm." Betts, 621 F.3d at 256 (second alteration in original) (quotation omitted). "The question of [the defendant's] deliberate indifference is a subjective inquiry, while risk of harm is evaluated objectively." Id. (citation omitted). Defendants argue that Plaintiff cannot establish that Colon-Ortiz was deliberately indifferent to a substantial risk of serious harm to Plaintiff. Defendants maintain that the decision to move Plaintiff to general population was made because Plaintiff posed a danger to other inmates. (See Defs. Ex. A at 3 of 3.) Plaintiff has failed to come forward with any evidence regarding whether Colon-Ortiz was deliberately indifferent to a substantial risk of harm to Plaintiff when she voted to remove him from the RTU and move him to general population. Consequently, we find that Plaintiff has failed to respond to the Motion for Summary Judgment with a factual showing "sufficient to establish the existence of an element essential to" his Section 1983 claim and we grant the Motion for Summary Judgment as to Plaintiff's claim against Colon-Ortiz in Count I of the Amended Complaint. Celotex, 477 U.S. at 322.

B.    <u>Count II</u>

Count II of the Amended Complaint alleges a claim for violation of Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. Defendants ask us to grant summary judgment on behalf of the DOC with respect to Count II of the Amended Complaint because Plaintiff failed to exhaust his administrative remedies as to this claim and because the record evidence is insufficient to establish all of the elements of a claim under Title II of the ADA.

1.    <u>Exhaustion of Administrative Remedies</u>

Defendants argue that the DOC is entitled to summary judgment with respect to Count II of the Amended Complaint on the ground that Plaintiff did not exhaust his administrative remedies with respect to his ADA clam because he failed to submit a formal request for accommodation pursuant to the DOC's Administrative Directive 006 ("ADM 006").  ADM 006 states that "[a]n inmate seeking an accommodation for a disability shall submit . . . a request using the Inmate Disability Accommodation Request Form" which "must describe the inmate's specific disability(ies), the specific activity(ies), and the specific action the inmate wishes the Department to take to allow him/her to perform the activities."    <u>See</u> https://www.pa.gov/ content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/006%20Reasonable%20 Accommodations%20for%20Inmates%20with%20Disabilities.pdf at 2-1 (last visited 8/21/25) (emphasis omitted).  Defendants rely on <u>Zamichieli v. Pennsylvania Department of Corrections</u>, No. 19-3305, 2022 WL 777201 (3d Cir. Mar. 14, 2022), in which the Third Circuit determined that the District Court had correctly entered summary judgment on behalf of the DOC with respect to

the plaintiff's unexhausted claim for an accommodation because the plaintiff had failed to submit

a formal request for accommodation pursuant to ADM 006 or a grievance pursuant to ADM 804.

Id. at *2.

Plaintiff maintains that he was not required to use the DOC's request for accommodation

form pursuant to ADM 006 in order to properly exhaust his ADA claim.  Plaintiff maintains that,

pursuant to the DOC's grievance policy, ADM 804, an inmate is required to describe the factual

basis for his grievance, but is not required to state all of the legal theories that support his claim.

See Jackson v. Ivens, 244 F. App'x 508, 513 (3d Cir. 2007) ("As long as there is a shared factual

basis between the two, perfect overlap between the grievance and a complaint is not required by

the PLRA." (citation omitted)); see also Travillion v. Harry, Civ. A. No. 22-1196, 2024 WL

1285542, at *5 (M.D. Pa. Mar. 26, 2024), aff'd sub nom. Travillion v. Wetzel, No. 24-1763, 2025

WL 971669 (3d Cir. Apr. 1, 2025) (stating that "'[a]lthough the prison grievance policy directs an

inmate to specifically state any claims he/she wishes to make concerning violations of [DOC]

directives, regulations, court orders, or other law[,] it does not require an inmate to identify all of

the specific legal theories that might apply to the facts alleged in his or her grievance.'" (alterations

in original) (quoting Beenick v. Lefebvre Civ. A. No. 14-1562, 2016 WL 5402249, at *8 (M.D. Pa.

July 29, 2016), report & recommendation adopted by 2016 WL 5376120 (M.D. Sept. 26, 2016),

aff'd, 684 F. App'x 200 (3d Cir. 2017)) (internal quotation omitted) (citation omitted)).  Plaintiff

asserts that his grievance included all of the facts underlying his claim under Title II of the ADA,

specifically that his mental health issues would prevent him from functioning in the general

population where he would not be able to access services and accommodations for prisoners with

serious mental illness.  As we detailed above, Plaintiff's grievance states the following facts:

> The well documented history of self harm and violence has caused a significant
> disruption to this inmate's everyday life and prevents his functioning in general

> population where prison staff aren't trained to deal with prisoners diagnosed with a serious mental illness, staff are not trained in de-escalation techniques and there's no treatment setting, especially 2 months after a suicide attempt.

(Pl. Ex. A at 2.)  We find that Plaintiff's grievance sufficiently exhausted his ADA claim because it clearly stated the factual basis for that claim.  We conclude that <u>Zamichieli</u> does not require the entry of summary judgment on behalf of the DOC here because the <u>Zamichieli</u> court affirmed the District Court's finding that the plaintiff had failed to exhaust his ADA claim in that case only because the plaintiff had not filed <u>either</u> a request for accommodation pursuant to ADM 006 <u>or</u> a grievance pursuant to ADM 804.  In this case, Plaintiff filed and exhausted a grievance addressing the facts underlying his ADA claim pursuant to ADM 804 and we conclude that the grievance was sufficient to exhaust Plaintiff's administrative remedies with respect to Plaintiff's ADA claim.  <u>See</u> <u>Robinson v. Pa. Dep't of Corr.</u>, Civ. A. No. 20-2978, 2024 WL 1288626, at *11 (E.D. Pa. Mar. 26, 2024) (determining that an inmate "sufficiently exhausted his administrative remedies for purposes of bring[ing] his present ADA . . . claims against the DOC" even though the inmate had not filed a request for accommodation pursuant to ADM 006, because the inmate had made his request for accommodation through a grievance filed pursuant to ADM 804).    Accordingly, we deny Defendants' Motion for Summary Judgment as to Count II of the Amended Complaint to the extent that Defendants argue that Plaintiff failed to exhaust his ADA claim.

> 2.    The ADA Claim

Count II of the Amended Complaint asserts that the DOC violated Title II of the ADA by discriminating against Plaintiff on the basis "of his psychiatric disabilities by depriving him of the benefits of its services, programs, and activities on account of his disability" and by failing to provide him "with reasonable accommodations that would allow him equal access and benefit to the programs, services, and activities at SCI Phoenix."  (Am. Compl. ¶ 47.)  In order to succeed

on a claim under Title II of the ADA, a plaintiff "'must demonstrate:  (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'"  Williams v. Sec'y Pa. Dep't of Corr., 117 F.4th 503, 527 (3d Cir. 2024) (alteration in original) (quoting Haberle v. Troxell, 885 F.3d 170, 178-79 (3d Cir. 2018)).  "'[M]ental illness qualifies as a disability under' the ADA."  Id. at 528 (alteration in original) (quoting Disability Rts. N.J., Inc. v. Comm'r, N.J. Dep't of Hum. Servs., 796 F.3d 293, 301 (3d Cir. 2015)) (citing 28 C.F.R. § 35.108(d)(2)(iii)).

Defendants argue that we should grant summary judgment to the DOC with respect to Plaintiff's ADA claim because he cannot satisfy the fourth element of an ADA claim since the record evidence shows that the individuals who voted to remove Plaintiff from the RTU did not do so because of his disability, but because they believed that he posed a safety concern for other inmates.  Defendants rely on a Vote Sheet dated October 20, 2021, which states as follows:

> Inmate Bennett is being staffed for RTU removal and placement in General Population.  Upon arrival to SCI PHX, he was housed in the POC.  He has been housed on the RTU since 10/15/2020 with one DTU placement and one POC/SOU placement.  He is currently a dietary worker for G-D wing and received average housing reports per his last annual review.  Inmate Bennett occasionally attends RTU groups and participate [sic] in MH treatment.  He is medication compliant. Recently, it has been reported that inmate Bennett is the source of drug and contraband delivery to the unit.  Other RTU inmates have reported feeling threatened by inmate Bennett and are concerned for their safety and wellbeing.  He appears to be a motivated and hard worker, but unit staff received reports that he is controlling of block workers and their job duties.  Per PRT on 10/13/2021, the unit team agreed that inmate Bennett is a threat to other inmate's mental health and safety and should be removed from the RTU.  The RTU no longer has anything to offer inmate Bennett.

(Defs. Ex. A at 3 of 3.)  We find that Defendants have submitted evidence that the decision to remove Plaintiff from the RTU was not based on his disability.  However, the Third Circuit has explained that the "by reason of his disability" factor of a claim pursuant to Title II of the ADA

does not require the plaintiff to show that his prison housing was changed because of his disability, but may be satisfied if the plaintiff can show that "considering [the prisoner's] disability, the DOC failed to take certain pro-active measures to avoid the discrimination proscribed by Title II [of the ADA]." Williams, 117 F.4th at 528 (alteration in original) (quotation omitted).

The plaintiff in Williams was "a death-row prisoner with a history of mental illness [who] was held in solitary confinement on the Capital Case Unit (CCU) of a Pennsylvania state correctional institution for twenty-six years." Id. at 507. He sued the Secretary of the DOC, claiming that "being continuously held in solitary confinement for twenty-six years without penological justification violated the Eighth Amendment's cruel and unusual punishment clause and the [ADA]." Id. The district court granted summary judgment for the defendants and the plaintiff appealed. Id. The defendant argued on appeal that the plaintiff's "ADA claim fails because he was not placed in solitary confinement 'by reason of' his disability but instead because of his death sentence." Id. at 528 (quotation omitted). The Third Circuit rejected this argument as misconstruing the plaintiff's claim. Id. The Third Circuit explained that the plaintiff in Williams did "not argue that he was placed in solitary confinement 'by reason of' his disability. Instead, he argue[d] that, considering his disability, the DOC failed to 'take certain pro-active measures to avoid the discrimination proscribed by Title II [of the ADA].'" Id. (second alteration in original) (quoting Chisolm v. McManimon, 275 F.3d 315, 325 (3d Cir. 2001)). The Third Circuit based its analysis of the plaintiff's ADA claim in Williams on its treatment of a similar ADA claim in Furgess v. Pennsylvania Department of Corrections, 933 F.3d 285 (3d Cir. 2019). In Furgess, as in Williams, the Third Circuit was required to determine whether "an incarcerated person with a disability[] had suffered discrimination 'by reason of his disability.'" Id. (quoting Furgess, 933 F.3d at 291). The plaintiff in Furgess "had received the accommodation of an accessible shower

stall in general population." Id. (citing Furgess, 933 F.3d at 291). The plaintiff brought a discrimination claim against the DOC after he was placed in a restrictive housing unit that did not have an accessible shower. Id. (citing Furgess, 933 F.3d at 291). "In response to [the plaintiff's] disability discrimination claim, the DOC argued that [the plaintiff] was 'deprived of a shower because his own misconduct landed him in the RHU, which lacked accessible shower facilities, not because the [DOC] intentionally discriminated against him on the basis of his disability.'" Id. (third alteration in original) (quoting Furgess, 933 F.3d at 291). The Third Circuit rejected that argument, "determine[ing] that the DOC had misconstrued the causation element under the ADA" and explaining that "the reason why [the plaintiff] was housed in the RHU is irrelevant . . . . [A] prison's obligation to comply with the ADA . . . does not disappear when inmates are placed in a segregated housing unit, regardless of the reason for which they are housed there.'" Id. (third through fifth alterations in original) (quoting Furgess, 933 F.3d at 291). The Third Circuit applied the following to the ADA claim in Williams:

> Although [the plaintiff] was placed in solitary confinement pursuant to a prison policy, the DOC's obligation to comply with the ADA did not disappear because of his death sentence. One who violates the ADA (or any other statute) cannot escape liability merely because the violation is a result of a state policy that conflicts with federal law. Indeed, a contrary holding would erode the protections afforded by remedial statutes such as the ADA, as the rights they confer would depend on the vagaries of governmental policies. Just as the DOC's failure to provide accessible showers in the RHU was not *by reason of* [the Furgess plaintiff's] alleged misconduct, the DOC's failure to provide Williams with reasonable accommodations for his disability was not *by reason of* his death sentence.

Id. at 528-29. Based on this reasoning, we reject Defendant's argument that Plaintiff cannot succeed on a claim brought pursuant to Title II of the ADA simply because there is record evidence that the individuals who voted to remove Plaintiff from the RTU did so because he had engaged in misconduct, if the result of his removal from the RTU was the failure to make necessary

accommodations for Plaintiff's disability or to deprive him of the benefits of services, programs, or activities that he would otherwise be able to access.

There is record evidence that Plaintiff is a qualified individual with a disability, specifically mental illness. (See Pl. Exs. C at 4 of 5; D at 1.) There is also evidence that, as a result of being moved to general population, Plaintiff has been excluded from participation in certain mental health services, including 35 hours a week of programming and therapeutic groups. (See Pl. Ex. B at 5-6.) The record also includes evidence that, as a result of being moved to the general population, Plaintiff can no longer benefit from interactions with correctional staff on the RTU, who have specialized training, including Crisis Intervention, Mental Health First Aid and Suicide Prevention, as well as training "on recovery model concepts, behavior modification, conflict intervention, and managing the intellectually impaired." (Pl. Ex. B at 14.) There is also record evidence that Plaintiff has been deprived of these accommodations, programs, and services because he was moved from the RTU to the general population. (See Pl. Ex. A at 2.) We conclude, accordingly, that Plaintiff has pointed to record evidence that creates a genuine issue of material fact regarding whether the DOC violated Title II of the ADA when it deprived him of necessary accommodations and the benefits of the programs and services available on the RTU. Accordingly, we deny the instant Motion for Summary Judgment with respect to Count II of the Amended Complaint.

## IV.    CONCLUSION

For the reasons stated above, we grant the instant Motion for Summary Judgment with respect to Count I of the Amended Complaint, we enter judgment on that Count in favor of Defendants Matteo and Colon-Ortiz and against Plaintiff, and we dismiss Defendants Matteo and

Colon-Ortiz.  We deny the Motion with respect to Count II of the Amended Complaint.  An order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.